See Concurring Opinion

Filed 12/9/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | E083533 |
| Plaintiff and Appellant, | (Super.Ct.No. INF2202269) |
| v. | OPINION |
| S.H., | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Charles G. Rogers, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed with directions.

Michael A. Hestrin, District Attorney, Kristen Allison and Matthew Murray Deputy District Attorneys for Plaintiff and Appellant.

Rob Bonta, Attorney General, Carl W. Sonne, Assistant Attorney General, Marichelle S. Tahimic and Kristen T. Dalessio, Deputy Attorneys General for Loretta Melby, Executive Officer of the California Board of Registered Nurses as Amicus Curiae on behalf of Plaintiff and Appellant.

Joshua M. Mulligan and Forest Wilkerson for Defendant and Respondent.

Penal Code[1] section 236.15 allows the trial court to vacate a conviction on a nonviolent offense if the conviction was the direct result of being a victim of intimate partner violence or sexual violence. Defendant and respondent S.H.[2] petitioned under section 236.15 to vacate his conviction for possessing child pornography, arguing his offense directly resulted from sexual violence he had suffered both as a child and as an adult. After a January 2024 evidentiary hearing, over the People's opposition, the trial court granted defendant's petition.

We reverse, finding defendant's possession of child pornography was not a "direct result" of his being a victim of sexual violence under section 236.15.

FACTS

In October 2022, the People charged defendant (born 1982) with one count of possessing child pornography (§ 311.11, subd. (a)) and an enhancement for possessing more than 600 images, of which 10 or more involved minors less than 12 years old (§ 311.11, subd. (c)(1)). In February 2023, defendant accepted a plea agreement and pleaded guilty as charged. In exchange, he was sentenced to two years formal probation and 90 days in jail to be completed on a work release program; he also had to register as a sex offender.

_____

[1] Undesignated statutory citations are to the Penal Code.

[2] Section 236.15, subdivision (q), requires that the "record of a proceeding related to a petition pursuant to this section that is accessible by the public shall not disclose the petitioner's full name." We interpret that provision to include appeals of trial court rulings on section 236.15 petitions.

2

In September 2023, defendant petitioned for his conviction to be vacated under section 236.15. Defendant's declaration described his parents as active members in a "cult"; his father was a minister and "extremely preoccupied with the church." Defendant recounted physical and emotional abuse at the hands of his parents and other family members. He described "a myriad of memories of family members beating children" and "lived in constant fear that [he] was next." When he was seven years old, he watched as his aunt pulled his cousin "across the floor by her hair and hit her with a hairbrush until she was bloody in the face." At another aunt's house, he saw her "lock her youngest children in a dark room in the basement and putting a wet towel in front of the door to muffle their screams and cries for help." He recalled both his parents being brutal towards animals, including his father killing family cats and dogs, and "four or five different times" when his mother forced defendant and his siblings to drown unwanted litters of puppies. His mother was "extremely violent" with defendant, and "anything was liable to set her off."

Defendant also described being sexually abused on multiple occasions, by older children and by adults, including his father, beginning when he was five years old and repeated through his childhood. As a young adult, he "experienced multiple attempted exorcisms . . . by church members to '[exorcise] the gay out of [him]'"

At 24, defendant "escape[d]" and began to build a new life, becoming a registered nurse in 2011.[3] Three more times, however, he was again the victim of sexual violence. When he was 25, he "was violently raped by a man [he] met at a gay bar and had a brief relationship with. That ended the relationship." He was drugged and raped on two other occasions, by other perpetrators, when he was 27 and again in 2018. The 2018 rape had lingering physical consequences, causing pain and requiring multiple medical procedures.

According to defendant, the sexual violence had severe psychological effects, particularly after the 2018 rape: "I suffered from debilitating panic attacks and major depression as well as periods of dissociation. It was at this time I turned more to pornography than normal as a means of self-soothing and a safer release than with someone else." Memories of the animal abuse he had witnessed and forced to participate in as a child, as well as the "worst" work environment he had "ever been in," also contributed to him being "in bad shape mentally." Defendant sought treatment from a "PTSD specialist therapist." In therapy, he began to "uncover memories"—including of childhood sexual abuse—that were "extremely painful and horrific to remember." He "began experiencing flashbacks and having vivid memories," causing him "a great deal of mental anguish."

Shortly after the 2018 rape, a man ("David") who defendant "was talking with and who asked for nude pictures and videos" sent him "some child porn (accidentally he

---

[3] Defendant's profession matters here in part because Loretta Melby, the executive officer of the entity that governs licensing of registered nurses, the California Board of Registered Nursing, filed an amicus brief supporting the People's appeal.

4

claims).” Defendant was intensely drawn to the child pornography: “I had always enjoyed a certain type of pornography with men and their father figures, as I am only attracted to men who are older than me and I liked to see myself as the son figure. But the child pornography showing the same thing with a child was different, because I truly associated with the role of the child, as I felt like I was reliving the trauma [of] my childhood and youth.” Defendant said he “did not understand” why he was drawn to child pornography at the time, but he has learned he “was fantasizing about the father figure due to the abuse that [he] suffered.” He emphasized: “I have never been attracted to the child in these images and would only picture myself as the child. . . . Pretending that I was the boy, I felt in control of what had happened. I could rewrite that scene in my mind, making me in control of the men and others who molested me and with the rape.”

According to defendant, he “voluntarily deleted” all child pornography files from his computer before his arrest, trying to “clean [himself] up and regain control of [his] life and mind.” He testified that he did so “at least six months” before his arrest. He was not aware, however, that child pornography remained on a “cloud drive,” which he had “no idea how to access.” And he had been so “ashamed” about the child pornography that he “could not even bring it up to a therapist.”

In September 2023—after his arrest, but before his plea—defendant voluntarily sought treatment at a program certified through the California Sex Offender Management Board. (See §§ 9001-9003.) It provided two weeks of “intense therapy and daily

5

classes" in a partial hospitalization setting, meaning six to eight hours of daily treatment. Terry Gatewood, the program's clinical director, submitted a letter supporting defendant's petition to vacate his conviction. Gatewood's "professional conclusion" was that defendant's "Post-Traumatic Stress Disorder caused by the [2018] rape event," together with the memories of "repeated sexual abuse in early childhood" that were being uncovered through therapy, were "directly responsible for his behavior of Trauma Repetition exhibited by his viewing" child pornography and "identifying solely with the young victim." Gatewood also testified at the hearing on defendant's petition. He described defendant's behavior of "trauma repetition" as a "very complex" result of his upbringing and his later experiences, a "perfect storm" of components that came together when he was raped as an adult in 2018.

Gatewood assessed defendant using a procedure that "measures an adult person's sexual attraction beyond his awareness utilizing the Visual Response Time (VRT) method."[4] The assessment confirmed defendant's self-report, finding he demonstrated "no sexual attraction to persons under the age of 13."[5] Given defendant's previous therapy, his treatment in the sex offender treatment program, and his "continued

_____

[4] Gatewood characterized the procedure, known as an ABEL AASI-3 screening, as a "standard procedure" used to assess sex offenders.

[5] Gatewood's letter emphasized that sexual attraction to adolescents aged 14 to 17 "is NOT considered deviant sexual attraction due to genetic programing." He testified that the screening test showed defendant had "some attraction" to children aged 14 to 17, but that is not considered deviant under the test's guidelines, though acting on such attractions would be "deviant and illegal."

outpatient treatment and 12 Step Meetings," Gatewood's opinion was that defendant's risk of recidivism was "very low."

After defendant's conviction, the state's Board of Registered Nursing initiated disciplinary proceedings to remove his nursing license.[6] Those proceedings remained pending when the trial court entertained his section 236.15 petition. Defendant's employer since 2019, a cosmetic surgery practice, fired him because of disruptions to the practice resulting from publicization of the charges. Nevertheless, the doctor who ran the practice submitted a letter supporting defendant's section 236.15 petition. He described firing defendant as "a gut wrenching decision": "I see the good in [him] and I wish I would have been able to help him to heal previous traumas and to be able to reach his fullest potential as a human being. I hope and pray that the universe will give him a second chance at redemption." Defendant had started his own "Botox company," but "live[d] under constant fear of being labeled a child molester and ruined or chased from a community and losing [his] work."

Defendant and Gatewood testified at the January 2024 evidentiary hearing. At the end of the hearing, the court indicated its tentative ruling was to grant the petition and took the matter under submission. The court later issued a minute order and statement of decision granting the petition. Defendant's counsel gave notice of the ruling to the Board

---

[6] We grant the Board's unopposed request that we take judicial notice of the accusation against defendant and several related documents.

of Registered Nursing, and the disciplinary proceedings against defendant were dismissed.

## DISCUSSION

A. *Required Elements for Section 236.15 Relief*

During the hearing on defendant's section 236.15 petition, the trial court observed that section 236.15 "appears . . . to have two routes to relief," with lack of requisite intent to commit the offense an element under subdivision (a), but not subdivision (g). Looking to statutory context and legislative history, we conclude the statute is best interpreted to have only a single set of elements. Fortunately, the parties and the trial court focused on the elements as laid out in subdivision (g), which accurately describes the sole path for a petitioner to obtain relief.[7]

The parties' misinterpretation, however, was understandable. As we detail below, viewed in isolation, section 236.15, subdivision (a)'s current language is ambiguous. In our view, the clause in that subdivision ". . . that demonstrates that the person lacked the requisite intent to commit the offense" is best understood not to describe an element that the defendant must show, but rather a legal conclusion that follows from the defendant's showing "by clear and convincing evidence, that the arrest or conviction was the direct

---

[7] The court stated its tentative view, later adopted as its final ruling, that "the defense has met their burden by clear and convincing evidence on all of the elements of the [subdivision (g)] theory," observing "[i]t's a little bit dicier with respect to [subdivision (a)] because of that intent issue." The prosecutor also affirmed that "the People were proceeding under [subdivision (g)]."

result of being a victim of intimate partner violence or sexual violence." (§ 236.15, subd. (a).)

Our role in construing a statute is to "discern the Legislature's intent 'so as to effectuate the purpose of the law.'" (*People v. Hupp* (2023) 96 Cal.App.5th 946, 950, quoting *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387.) "We begin by examining the statutory language," but we "look to the entire substance" of statutes, "constru[ing] the words in question in context, keeping in mind the statute['s] nature and obvious purposes." (*People v. Cole* (2006) 38 Cal.4th 964, 975.) We may resort to evidence of legislative intent beyond the language of the statute where, as here, that language alone provides "no definitive answer." (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

The Legislature enacted section 236.15 effective January 1, 2022, as part of Assembly Bill No. 124 (2021-2022 Reg. Sess) (Assembly Bill 124), Stats. 2021, ch. 695) and amended it effective at the start of each of the next two years. As enacted, section 236.15 provided: "If a person was arrested for or convicted of any nonviolent offense committed while the person was a victim of intimate partner violence or sexual violence, the person may petition the court for vacatur relief of their convictions and arrests under this section. The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence or sexual violence." (Stats. 2021, ch. 695, § 1.) Subdivision (g) of the statute provided: "After considering the totality of the evidence presented, the court may vacate the

9

conviction and expunge the arrests and issue an order if it finds all of the following: [¶] (1) That the petitioner was a victim of intimate partner violence or sexual violence at the time the nonviolent offense was committed[;][¶] (2) The commission of the crime was a direct result of being a victim of intimate partner violence or sexual violence[;][¶] (3) The victim is engaged in a good faith effort to distance themselves from the perpetrator of the harm [;][¶] (4) It is in the best interest of the petitioner and in the interests of justice." (*Ibid.*)

As enacted and now, section 236.15 defines "'[n]onviolent offense'" as "any offense not listed in subdivision (c) of Section 667.5." (§ 236.15, subd. (t)(1).) Defendant's conviction offense, section 311.11, subdivision (c)(1), is not listed in subdivision (c) of section 667.5.

The relief provided by an order of vacatur under section 236.15 is broad. For purposes of the section, "'[v]acate'" is defined to mean "that the arrest and any adjudications or convictions suffered by the petitioner are deemed not to have occurred and that all records in the case are sealed and destroyed pursuant to this section." (§ 236.15, subd. (t)(2).) "Notwithstanding any other law," a petitioner "may lawfully deny or refuse to acknowledge an arrest, conviction, or adjudication that is set aside" under section 236.15, and "the records of the arrest, conviction, or adjudication shall not be distributed to any state licensing board." (*Id.*, subds. (o) & (p).)

Effective January 1, 2023, the Legislature adopted Assembly Bill No. 2169 (2021-2022 Reg. Sess.) (Assembly Bill 2169), amending section 236.15 and the parallel statute

10

providing relief to victims of human trafficking, section 236.14. (Stats. 2022, ch. 776, § 2.) The amendment removed the requirements that the court find that the petitioner is engaged in good faith efforts to distance themselves from the perpetrator of the harm and that vacating the arrest, adjudication, or conviction was in the best interest of the petitioner. As amended, section 236.15, subdivision (g) requires three findings to vacate an arrest or conviction: "(1) That the petitioner was a victim of intimate partner violence or sexual violence at the time of the alleged commission of the qualifying crime[;][¶] (2) The arrest or conviction of the crime was a direct result of being a victim of intimate partner violence or sexual violence[;][¶] (3) It is in the best interest of justice."

The bill also made changes intended to clarify that the basis for section 236.15 relief is a legal defect. A committee report noted that an arrest or conviction vacated under state law may have adverse federal immigration consequences unless the vacatur is based on a legal defect in the arrest or conviction. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2169 (2021-2022 Reg. Sess.), as amended March 17, 2022, p. 4.) Originally, section 236.15 "fail[ed] to explicitly specify that the vacatur relief is based on a substantive defect that legally invalidates the conviction." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2169 (2021-2022 Reg. Sess.), as amended March 17, 2022, p. 4.) As a result, a conviction vacated under section 236.15 was "erased under state law," but "non-citizen victims continue[d] to face collateral immigration consequences." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2169 (2021-

11

2022 Reg. Sess.), as amended March 17, 2022, at pp. 4-5.) Thus, the bill "clarifie[d] that vacatur relief under Sections 236.14 and 236.15 is based on a substantive defect in the underlying arrest or conviction—that petitioner lacked the requisite mens rea (i.e., intent) to commit the offense, which is a necessary element of all criminal offenses." (*Id*. at p. 5.) The bill "also clarifie[d] that the vacatur is based on a finding that the conviction or arrest is invalid due to a legal defect." (*Ibid.*)

Some statutory changes enacted by Assembly Bill 2169 unambiguously reflect that intent. As amended, section 236.15, subdivision (h), requires an order vacating an arrest or conviction to "[s]et forth a finding that the petitioner was a victim of intimate partner violence or sexual violence at the time of the alleged commission of the qualifying crime *and therefore lacked the requisite intent to commit the offense*," and a court must "[s]et aside the arrest, finding of guilt, or the adjudication and dismiss the accusation or information against the petitioner *as invalid due to a legal defect at the time of the arrest or conviction*." (Stats. 2022, ch. 776, § 2 (italics added); see § 236.15, subd. (h)(1) & (2).)

Unfortunately, for want of a comma, Assembly Bill 2169's changes to section 236.15, subdivision (a), resulted in ambiguity. The last portion of that subdivision was amended to add the language that we will here place in italics: "The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence or sexual violence *which demonstrates that the person lacked the requisite intent to commit the offense. Upon this*

12

*showing, the court shall find that the person lacked the requisite intent to commit the offense and shall therefore vacate the conviction as invalid due to legal defect at the time of the arrest or conviction.*" (Stats. 2022, ch. 776, § 2 (italics added).  With a comma before "which," it would be apparent that the last clause of that sentence describes the legal conclusion that follows from a petitioner carrying his or her burden of proof.  (See Garner's Modern English Usage (4th ed. 2016) pp. 995, 1016 [restrictive and nonrestrictive clauses].)  That would accord with the legislative intent discussed above, as well as the language of section 236.15, subdivisions (g) and (h).  Without the comma and taken in isolation, the same language is susceptible to being misinterpreted as a restrictive clause, meaning that lack of the requisite intent to commit the offense is itself something the petitioner must show by clear and convincing evidence.

The next amendment to section 236.15, subdivision (a), only further muddied the waters.  A code maintenance bill effective January 1, 2024, made "nonsubstantive" amendments to numerous code sections, including section 236.15, subdivision (a).  (Stats 2023, ch. 131, § 149.)  In the current version of the statute, "which" is replaced with "that":  "The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence or sexual violence *that* demonstrates that the person lacked the requisite intent to commit the offense."  (§ 236.15, subd. (a) (italics added).)  This change, however, made misinterpretation more likely, as "that" is more easily—but here incorrectly—read to

13

indicate a restrictive clause.  Adding the comma instead would have better expressed the intended meaning.

Nevertheless, even as currently formulated, in context, the Legislature's intended meaning is discernible.  It would be odd for subdivision (a) of the statute to provide a defendant with one path to relief, while another path requiring different evidence appeared in subdivision (g), without express language to that effect.  Our reading of section 236.15, subdivision (a), best gives meaning and effect to all parts of the statute.  (See *People v. Shabazz* (2006) 38 Cal.4th 55, 67 ["'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible'"].)  Our reading is also confirmed by the extrinsic evidence of legislative intent we discuss.  We therefore reject the People's arguments on appeal based on the premise that it is a defendant's burden to produce evidence showing a lack of the requisite intent to commit the offense, rather than lack of intent being a legal conclusion that follows from the defendant's showing that the conviction was the direct result of being a victim of intimate partner or sexual violence.

The bottom line, then, is that a section 236.15 petitioner's burden is to establish that he or she "was a victim of intimate partner violence or sexual violence at the time of the alleged commission of the qualifying crime," and his or her arrest and conviction were "a direct result of being a victim of intimate partner violence or sexual violence." (§ 236.15, subd. (g)(1)-(2).)  If the court is persuaded of those two elements, and also

14

finds vacating the conviction would be "in the best interest of justice," it "may vacate the conviction and expunge the arrests and issue an order" granting the petition. (*Id.*, subd. (g)(3).) Because section 236.15, subdivision (a), expressly requires clear and convincing evidence only as to the first two of those three elements, we infer the preponderance of the evidence standard applies to any other factual findings underlying the trial court's determination of whether it would be in the best interest of justice to grant the petition.

B. *Standard of Review*

An order granting a petition to vacate an arrest or conviction under section 236.15 is an appealable order. (§ 1238, subds. (a)(2), (5), & (6).) Section 236.15, however, does not expressly address the appellate standard of review, and no appellate authority has considered it.

Under section 236.15 *as originally drafted*, there would be little basis to question that the abuse of discretion standard of review applied. "'Ordinarily, when a statute provides a court "may" do something,'" as section 236.15, subdivision (g), does, "'the statute is permissive, not mandatory, and grants the court a discretionary authority.'" (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071-1072.) And a court's determination of what the interests of justice require is inherently discretionary. (See, e.g., *People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*) ["'furtherance of justice'" inquiry under § 1385, subd. (c)(1), "requires a trial court's ongoing exercise of 'discretion' (*id.*, subd. (c)(2))"]); accord, *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530 (*Romero*).)

15

After Assembly Bill 2169, however, subdivision (a) of section 236.15 includes some mandatory language: "Upon this showing, the court *shall* find that the person lacked the requisite intent to commit the offense and *shall* therefore vacate the conviction as invalid due to legal defect at the time of the arrest or conviction." (Italics added.) Emphasizing this newer statutory language and our Supreme Court's recent interpretation of a different statute in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), the People propose instead independent review. We are not persuaded.

*Vivar* held that the independent review standard applies to rulings under section 1473.7, subdivisions (a)(1) and (e)(1). (*Vivar*, *supra*, 11 Cal.5th at p. 524; § 1473.7, subd. (a)(1), (e)(1).) A defendant may move under section 1473.7, subdivision (a)(1), to withdraw a plea because "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) In ruling on such a motion, the court "shall grant the motion . . . if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (*Id.*, subd. (e)(1).) Our Supreme Court's "embrace of independent review in this context [was] a product of multiple factors," including "the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence." (*Vivar*, at p. 527.)

16

Our context, however, differs.  "Whether counsel's advice regarding immigration was inadequate and whether such inadequacy prejudiced the defense, while mixed questions, are predominantly questions of law." (*Vivar*, *supra*, 11 Cal.5th at p. 524.)  The questions consider how lawyers act and the effect of those actions on judicial proceedings.  In contrast, how best to serve the interests of justice is an "'amorphous'" concept, limited by certain "'general principles,'" but otherwise entrusted to the "'broad'" discretion of the trial court. (*Romero*, *supra*, 13 Cal.4th at p. 530.)  Courts have "uniformly rejected attempts to decouple *Vivar* from its rationale, and to export its independent judgment standard of review into different contexts."[8] (*People v. Franco* (2024) 99 Cal.App.5th 184, 194.)  We will do the same.

Section 236.15's legislative history discussed above also weighs against the People's interpretation of the mandatory language added by Assembly Bill 2169.  The Legislature did not signal an intent to modify trial court analysis or appellate review of section 236.15 petitions.  Rather, the Legislature's expressed intent was to clarify the legal basis for section 236.15 relief to ensure the rulings would be given their intended effect by federal courts.  From this perspective, section 236.15, subdivision (a)'s sentence

---

[8] We doubt *Vivar* even applies to all of section 1473.7, subdivision (a); subdivision (a)(2) allows a motion to withdraw a plea when "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law *or in the interests of justice*." (Italics added.)  *Vivar* does not specify that its holding also applies to motions asserting actual innocence under section 1473.7, subdivision (a)(2).  Rather, the court's characterization of its own ruling was that it was adopting independent review "for all claims made under section 1473.7, subdivision (a)(1)." (*Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4.)  Nothing in *Vivar*'s reasoning suggests that its holding extends to the "interests of justice" aspect of subdivision (a)(2).

17

beginning "Upon this showing, the court shall find . . ." is best interpreted to specify findings and orders to be made after the trial court has found all the elements described in subdivision (g), including the discretionary determination of the best interest of justice.

Thus, we conclude the abuse of discretion standard of review applies here.

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 (*Haraguchi*).) Substantial evidence is "evidence that is reasonable, credible, and of solid value." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)  It is "well settled," even under the higher beyond a reasonable doubt standard, that the testimony of a single witness may be substantial evidence, sufficient to support a

18

conviction or other factual finding, "'unless the testimony is physically impossible or inherently improbable.'" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281 (*Ghobrial*).)

## C. *Abuse of Discretion*

The People argue no substantial evidence supports the trial court's finding that defendant "was a victim of intimate partner violence or sexual violence at the time of the alleged commission of the qualifying crime." (§ 236.15, subd. (g)(1).) Although they framed it in terms of substantial evidence, the People are advancing a legal argument about what it means to be a "victim . . . at the time of the alleged commission of the qualifying crime" (*ibid.*) and what it means for an offense to be committed "while the person was a victim of intimate partner violence or sexual violence (*id.*, subd. (a).) In the People's view, to qualify for relief, defendant "must have been victimized concurrent with his commission of the crime." Since defendant's conviction is for possessing child pornography in 2022, and there is no evidence he was a victim of sexual violence committed after 2018, the People conclude he could not possibly fall within section 236.15, subdivision (g)(1).

In their briefing in trial court and their opening brief here, the People relied exclusively on what they view as the plain meaning of being a victim at the time that the defendant committed a crime. The ordinary meaning of "victim," though, leads to a different result. It includes any person who has suffered from a crime directed at them. (See Black's Law Dictionary (12th ed. 2024), victim ["A person harmed by a crime, tort, or other wrong"]; *People v. Birkett* (1999) 21 Cal.4th 226, 243 ["victims as ordinarily

19

understood" are "those against whom crimes had been committed"].)  In various contexts, the Penal Code employs definitions that reflect that ordinary meaning.  (See, e.g., § 136, subd. (3) ["'Victim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated"]; § 679.01, subd. (b) [victim is "a person against whom a crime has been committed"].)  A person who has suffered from a crime directed at them remains a "victim" in that ordinary sense even after the crime is complete and the person is no longer being victimized, whether a day later or years later.

Applying the ordinary meaning of "victim," section 236.15, subdivision (g)(1)'s language  "was a victim . . . at the time of the alleged commission of the qualifying crime," or subdivision (a)'s language about offenses committed "while the person was a victim of intimate partner violence or sexual violence," excludes any person who became a victim of intimate partner or sexual violence only *after* committing an otherwise-qualifying crime.  Given that section 236.15 reflects a legislative judgment about a defendant's mental state when a crime was committed, it would not make sense to provide relief based on events that occurred after the crime.

A difficulty with adopting this ordinary meaning of "victim," however, is that it also would mean that, after a person was a victim of intimate partner violence or sexual

20

violence, the person would *always* be a "victim" under the statute.[9] That would be in tension with section 236.15, subdivision (*l*), which contemplates circumstances where a petitioner is *no longer* a victim. Under subdivision (*l*), a section 236.15 petition "shall be made and heard within a reasonable time after the person has *ceased to be a victim* of intimate partner violence or sexual violence or within a reasonable time after the petitioner has sought services for being a victim of intimate partner violence or sexual violence, whichever occurs later . . . ." (Italics added.)

Moreover, in other statutes added or modified by Assembly Bill 124, the Legislature uses language that sweeps in both past and present victims. For example, for determinate sentences, section 1170, subdivision (b)(6), makes the low term the presumptive term if a contributing factor in the commission of the offense was that "the person *has experienced* psychological, physical, or childhood trauma, including but not limited to, abuse, neglect, exploitation or sexual violence," or if "*[p]rior to* the instant offense, *or at the time of* the commission of the offense, the person *is or was* a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6)(A), (C); italics added; see also former § 1170 subd. (d)(1); § 1016.7, subd. (a)(1), (3).) The Legislature's

_____

[9] The People make an unpersuasive slippery slope argument that such an interpretation would equate to a lifetime get-out-of-jail free card. To obtain relief under section 236.15, a petitioner must demonstrate that each arrest or conviction was a "direct result" of being a victim, and that granting relief would be in the best interest of justice. Someone who continues to commit additional criminal offenses after receiving vacatur relief would not succeed in making these showings indefinitely, no matter their status as a "victim . . . at the time of the alleged commission of the qualifying crime" within the meaning of section 236.15. (§ 236.15, subd. (g))

21

decision not to use similar language in section 236.15 could demonstrate section 236.15 relief was intended to be available only for crimes committed concurrently with abuse.

But there are other problems with reading the statute to require that the crime be concurrent with abuse. As to the other statutes involving intimate partner violence, there often are straightforward ways to draw a line between when a person *is* a victim of intimate partner violence and when a person *was* a victim of intimate partner violence; for example, when the intimate partnership relationship ends, as demonstrated by the perpetrator's incarceration or by the victim escaping the relationship.[10] For sexual violence—at least for a single act of sexual violence—it would be odd to draw the line in the same way. We simply do not say someone no longer *is* a rape victim, but only *was* a rape victim in the past, the moment the rape itself is over. Hence the language of section 1170, subdivision (b)(6)(A) states that it applies where "the person has experienced . . . sexual violence," which differs from the provision applicable to victims of human trafficking or intimate partner violence framed in terms of "is" and "was." And for multiple acts of sexual violence, it would be discordant for the statute to cover offenses between the acts but exclude those after the last one.

Legislative history provides no definitive answer to this interpretive quandary. For example, Assembly Bill 124's author cited available statistics about the percentage of the female prison population with "*a history* of physical or sexual abuse before being

---

[10] An implication of the distinction means that, for instance, a victim's acts of prostitution could be covered while in the relationship but not immediately after escaping it. And the same would be true, presumably, for victims of human trafficking under the parallel provisions of section 236.14.

22

incarcerated," and also acknowledges other groups who are both "disproportionately *survivors* of violence and overrepresented in prison."[11] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 124 (2021-2022 Reg. Sess.), as amended Sept. 3, 2021, pp. 5-6 (italics added).) These statistics obviously include some who were being victimized concurrently with their offenses, but are not limited to them. But that does not tell us how far the vacatur relief offered by section 236.15 was meant to be extended, as distinguished from the other forms of relief provided by Assembly Bill 124.[12]

Similarly, the People emphasize portions of section 236.15's legislative history saying that the vacatur relief provided in section 236.14 for victims of human trafficking

---

[11] In the same vein, the author characterized Assembly Bill 124 as "an opportunity to correct unjust outcomes of the past, provide *full context of the experiences that might impact a person's actions*, and use a more humanizing and *trauma-informed* response to criminal adjudication." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 124 (2021-2022 Reg. Sess.), as amended Sept. 3, 2021, p. 6 (italics added).) The author observed: "When law enforcement views girls [and other victims of intimate partner or sexual violence] as perpetrators, and when their cases are not dismissed or diverted but sent deeper into the justice system, the cost is twofold: [their] abusers are shielded from accountability, and the trauma that is the underlying cause of the behavior is not addressed. The choice to punish instead of support sets in motion a cycle of abuse and imprisonment that has harmful consequences for victims of trauma." (*Ibid.*)

[12] In addition to the retrospective relief offered by section 236.15, Assembly Bill 124 also implemented reforms at the plea bargaining, trial, and sentencing stages of criminal proceedings. (Stats. 2021, ch. 695.) For example, Assembly Bill 124 added the language now found in section 1170, subdivision (b)(6), imposing a presumption of a lower term where the defendant "experienced psychological, physical, or childhood trauma," including "sexual violence," or where "[p]rior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking," and that was a "contributing factor in the commission of the offense." (See Stats. 2021, ch. 695, § 5.)

"was intended to provide relief for nonviolent offenses a human trafficking victim commits '*at the direction of the victim's trafficker*' or for such offenses the trafficking victim was '*forced to commit during [her] exploitation*,'" and that section 236.15 was intended to "mirror[]" section 236.14. (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 124 (2021-2022 Reg. Sess.), as amended April 15, 2021, p. 12 (italics added), quoting Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analyses of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended May 31, 2016; Sen Rules Com., Off. of Sen. Floor Analyses, unfinished business of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended Aug. 23, 2016.).) The italicized language, however, was never part of the proposed statutory language of any version of Assembly Bill 124, let alone final version that was enacted. Moreover, the first quote elides a modifier that is important for our purposes: "Research demonstrates that victims are often charged and convicted of crimes beyond prostitution and solicitation, like drug offenses, theft, using false identification and more, *usually* committed at the direction of the victim's trafficker." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analyses of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended May 31, 2016, p. 6 (italics added).) The same report, in the section describing the bill itself, says it would allow "dismissal of *any* non-violent offenses . . . committed as a result of or in clear connection with a human trafficking scheme of which the person *was* a victim." (*Id.* at p. 4 (italics added).)

In the end, we find no solid basis to define with precision the clauses "while the person was a victim" in section 236.15, subdivision (a), or "was a victim . . . at the time

24

of the alleged commission of the qualifying crime" in section 236.15, subdivision (g)(1). If needed to resolve this appeal, we would draw a line as best we can in hopes of properly discerning the Legislature's intent. In this case, though, we do not need to do that. We therefore only observe the ambiguity, and we suggest that the Legislature resolve it for other cases.

We turn, then, to a different aspect of section 236.15, the subdivision (g)(2) requirement that the arrest or conviction be a "direct result" of being a victim of intimate partner violence or sexual violence. The term is undefined in the statute.

In the People's view, section 236.15 is intended to provide relief only to "individuals who are in abusive relationships that are coerced and/or under duress to commit crimes, or else face dire consequences from their abusers." From that perspective, because "zero evidence was presented that [defendant] committed the crime at the behest of anyone . . . his commission of the crime was not the direct result of being a victim of . . . sexual violence," and he is not entitled to vacatur.

We disagree that "direct result" should be construed so narrowly for purposes of section 236.15. As part of Assembly Bill 124, the Legislature also added a special version of the coercion affirmative defense for offenses committed as a direct result of being a victim of intimate partner violence or sexual violence: "In addition to any other affirmative defense, it is a defense to a charge of a crime that the person was coerced to commit the offense as a direct result of being a victim of intimate partner violence or sexual violence at the time of the offense *and had a reasonable fear of harm*." (§ 236.24,

25

subd. (a) (italics added).)  We infer that if the Legislature intended section 236.15 relief to be similarly limited to where the petitioner was coerced to commit a crime, it would have mirrored the language of section 236.24, rather than omitting the reasonable fear element.

Moreover, we have found the parallel coercion defense for victims of human trafficking, section 236.23, does *not* require a showing that the victim committed a crime at the behest of someone:  "[T]he accused's reasonable fear of suffering harm as a result of the trafficker's scheme, plan, or pattern establishes the required showing of coercion to commit the offense as a direct result of being a human trafficking victim.  The provision does not require the trafficker to have direct involvement in, or even knowledge of, the minor's crime for the defense to apply."  (*In re D.C.* (2021) 60 Cal.App.5th 915, 921.)  In *In re D.C.*, a minor defended his possession of a concealed knife not as being at the behest of a perpetrator of human trafficking, but as being motivated by a reasonable fear of being kidnapped again by the perpetrator.  (*Ibid.*)  We remanded for factual findings about whether there was sufficient evidence to support that story, concluding that if the minor met his burden of proof, "then the trafficking defense must be applied."  (*Ibid.*)

Nevertheless, as used in section 236.15, "direct result" certainly requires a close causative nexus between the arrest or conviction and the intimate partner violence and sexual violence.  Black's Law Dictionary defines "direct" to mean (in the sense relevant here) "free from extraneous influence; immediate."  (Black's Law Dict. (12th ed. 2024); see also *Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (2024) 15 Cal.5th 1106,

1136 ["'commonly understood'" definition of direct is "'"proceeding from one point to another in time or space without deviation or interruption," "stemming immediately from a source," and "characterized by close logical, causal, or consequential relationship"'"].)

And the intimate partner violence or sexual violence must be something more than a "contributing factor" of the sort that makes the low term the presumptive term for determinate sentencing purposes under section 1170, subdivision (b)(6)(A) and (C).

Here, Gatewood's professional opinion was that the sexual violence defendant suffered—including the rapes he suffered as an adult and the childhood sexual abuse, memories of which emerged during therapy—was "directly responsible" for his later possession of child pornography. This does not establish, however, that defendant's conviction offense was a "direct result" of the sexual abuse under section 236.15. An expert may provide testimony that speaks to the ultimate factual issue in a case but cannot provide an opinion on a legal conclusion. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178.) Thus, we defer to the trial court's decision to credit Gatewood's testimony establishing a causal relationship between the sexual violence defendant suffered and his conviction offense; we review de novo its legal conclusion that the conviction offense was a *direct result* of that sexual violence. (*Haraguchi*, *supra*, 43 Cal.4th at pp. 711-712.)

In our view, defendant's possession of child pornography was not a "direct result" of sexual violence under section 236.15. We have no doubt that sexual violence was a contributing factor, perhaps even a but-for cause. But other contributing factors also

27

were in the mix, and they were significant and unusual, not merely attendant to the sexual violence.

First, the root causes of the psychological harm that defendant claims led to his offense are complex, complicating the ability to conclude that sexual violence was a direct cause of crime. Defendant showed that he suffered extreme non-sexual childhood abuse. This included a father who killed his childhood pets; a mother who forced him to kill puppies, told him she wished he had never been born, and beat him severely; and humiliating religious group "exorcisms" to remove the "gay" from him. These factors could be sympathetic in reducing his culpability, but they are not the intimate partner violence or sexual violence contemplated by the statute. As a child and as an adult, defendant also was repeatedly sexually abused. But the sum of defendant's horrid childhood makes it difficult to show the sexual violence directly caused him to possess child pornography. As Gatewood testified, defendant's behavior of "trauma repetition" was a "very complex" result of his upbringing and his later experiences, a "perfect storm" of components that came together when he was raped as an adult in 2018.

Second, there were significant contributing causes after the adult sexual violence that defendant suffered, which ended with the 2018 rape. David began to send defendant adult porn with father-son themes, later introducing defendant to child porn. Defendant asserted he was "influenced easily" and not in his "right mind" at the time, not just because of sexual violence in the past, but also because of the other forms of violence he suffered as a child, poorly controlled pain after surgeries, and traumatic events at work.

Defendant's own decisions, motivated by "shame" and repeated over years, to indulge in behavior that he "knew" was "wrong" rather than seek treatment, also contributed. This led him to not just possess child pornography once soon after the 2018 rape, but to continually possess it and view it for about three years until his arrest. Even with the sexual violence defendant suffered as a child and as an adult as an underlying cause of his child pornography possession, it is difficult to see it as a "direct" cause.

In our view, the length of time between 2018 when defendant last suffered sexual abuse and 2022, when he was caught possessing child pornography, is a particularly persuasive factor. The time between sexual violence and an arrest or conviction for an offense may not always be determinative. On these facts, however, we find the causal connection between the sexual violence defendant suffered and his possession of child pornography is attenuated by the passage of time, together with other contributing factors. (Cf. *In re D.C.*, *supra*, 60 Cal.App.5th at pp. 918, 921 [minor possessed a concealed knife the day after escaping from alleged human trafficker].) We would find "direct" causation a tougher question had defendant possessed the pornography shortly after the 2018 rape for a more limited time, rather then continuously over several years.

We conclude defendant's conviction offense was not a direct result of sexual violence under section 236.15, subdivision (g)(2). We therefore need not reach the parties' and amicus's arguments about the best interests of justice. Defendant is not entitled to relief under section 236.15, so the trial court's order to the contrary must be reversed.

DISPOSITION

We reverse the trial court's order granting petitioner's section 236.15 petition and remand the matter with directions to enter a new order denying the petition.

CERTIFIED FOR PUBLICATION

RAPHAEL
                                                                                            J.

I concur:

CODRINGTON
          Acting P. J.

[*People v. S.H.*, E083533]

MENETREZ, J., Concurring in the judgment.

In 2016, the Legislature created a procedure for victims of human trafficking to obtain vacatur of arrests and convictions for any nonviolent offenses "committed while [the defendant was] a victim of human trafficking," provided that "the arrest or conviction was the direct result of being a victim of human trafficking." (Pen. Code, § 236.14, subd. (a); unlabeled statutory references are to this code.) In order to grant relief, a court must find that the defendant "was a victim of human trafficking at the time" the nonviolent crime was committed. (§ 236.14, subd. (g)(1).) The purpose of the legislation was to free human trafficking survivors from the "criminal stigmatization" resulting from "acts they were forced to commit during their exploitation." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended Mar. 31, 2016, p. 5.)

In 2021, the Legislature made the same kind of vacatur relief available to victims of intimate partner violence or sexual violence. (§ 236.15.) The Legislature modeled the new statute on the 2016 statute for human trafficking victims, using the same language. In particular, the new statute applies to offenses "committed while the [defendant] was a victim of intimate partner violence or sexual violence" (§ 236.15, subd. (a)), and only a defendant who "was a victim of intimate partner violence or sexual violence at the time of" the offense can obtain relief (§ 236.15, subd. (g)(1)).

In February 2023, when defendant S.H. was 40 years old, he pled guilty to one felony count alleging that he possessed child pornography in 2022, and he admitted an

1

enhancement allegation that he possessed more than 600 child pornography images and that 10 or more images involved a prepubescent minor or a minor under age 12. (§ 311.11, subds. (a), (c)(1).) He received a 90-day jail sentence, to be served on work release, plus two years of formal probation.

In September 2023, S.H. filed a petition and motion for vacatur relief under section 236.15. He claimed that he was a victim of "extreme physical and sexual abuse" as a child, was "violently raped" at age 25, and was also "the victim of date rape" at age 27 and again in 2018. He contended that those experiences as a victim of sexual violence, the last of which occurred in 2018, caused him to commit the child pornography offense in 2022.

The trial court granted the petition, and the People appealed.

I agree with the majority opinion that S.H.'s petition should have been denied, but my reasoning differs from the majority opinion's. S.H. committed the child pornography offense in 2022, but there is no evidence that he was subjected to sexual violence after 2018. He is consequently ineligible for relief, because he was not "a victim of intimate partner violence or sexual violence at the time of the" offense (§ 236.15, subd. (g)(1)) and did not commit the offense "while [he] was a victim of intimate partner violence or sexual violence" (§ 236.15, subd. (a)).

The majority opinion declines to adopt that reasoning, however, on the ground that it presents a difficult question of statutory interpretation. (Maj. opn., *ante*, at pp. 20-25.) I disagree and therefore concur in the judgment only.

2

I.       *Statutory language*

In interpreting a statute, our "'fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105 (*Ruiz*).) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*Ibid.*) "'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.'" (*Id.* at p. 1106.)

The majority opinion claims that under "the ordinary meaning" of the word "victim," once a person becomes a victim of a crime, the person remains a victim forever thereafter. (Maj. opn., *ante*, at pp. 20-21.) Thus, on that interpretation of "victim," the statutory requirements that the defendant committed the offense "while [the defendant] was a victim of intimate partner violence or sexual violence" (§ 236.15, subd. (a)) and that the defendant was a victim of such violence "at the time" of the offense (§ 236.15, subd. (g)(1)) are satisfied as long as the defendant became a victim of such violence sometime before committing the offense.

That cannot be the meaning of "victim" in section 236.15, however, because the statute provides that a petition for vacatur relief must "be made and heard within a reasonable time after the person has *ceased to be a victim* of intimate partner violence or sexual violence or within a reasonable time after the petitioner has sought services for being a victim of intimate partner violence or sexual violence, whichever occurs later."

3

(§ 236.15, subd. (*l*).)  Thus, the statute expressly contemplates that a person who becomes a victim of sexual violence or intimate partner violence can later *cease to be* such a victim.  That would be impossible under "the ordinary meaning" of "victim" described in the majority opinion.  (Maj. opn., *ante*, at pp. 20-21.)  Consequently, the majority opinion's "ordinary meaning" of the word "victim" cannot be the meaning of that word as it is used in section 236.15.

But that does not make section 236.15 difficult to interpret.  There is an alternative but equally ordinary meaning of the word "victim," according to which a person commits a crime while the person is a victim of sexual violence or intimate partner violence only if the person commits the crime *while being subjected to such violence*.

There is at least one additional problem with interpreting the word "victim" in section 236.15 to mean that once a person becomes a victim, the person never ceases to be a victim.  On that interpretation of "victim," the statutory requirements that the defendant committed the offense "while [the defendant] was a victim of intimate partner violence or sexual violence" (§ 236.15, subd. (a)) and that the defendant was a victim of such violence "at the time" of the offense (§ 236.15, subd. (g)(1)) mean only that the defendant must become a victim of such violence sometime before committing the crime. (See maj. opn., *ante*, at p. 21.)  But if those statutory requirements mean nothing more than that, then they are surplusage—the requirement that the crime be "a direct result of being a victim" of such violence (§ 236.15, subd. (g)(2)) already guarantees that the defendant must become a victim before committing the crime, because a cause must

4

precede its effect. Interpretations that render statutory language surplusage are to be avoided. (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 691.)

The alternative interpretation does not have that problem: The statute requires both that the victimization and the crime be causally connected ("a direct result") and that they be contemporaneous ("while" and "at the time"). (§ 236.15, subds. (a), (g)(1), (g)(2).)

That should be the end of the matter. The plain language of the statute compels rejection of the majority opinion's putative ordinary meaning of the word "victim," and neither the majority opinion nor any party has identified any other way of interpreting the statutory language that would eliminate the requirement that the crime and the victimization be contemporaneous. (*Ruiz*, *supra*, 4 Cal.5th at p. 1106 [unambiguous statutory language is controlling].) S.H. committed the child pornography offense years after he was the victim of sexual violence or intimate partner violence, so he is ineligible for relief under section 236.15.

II.    *Extrinsic interpretive aids*

Even if the language of section 236.15 were ambiguous, the result would be the same, because extrinsic sources all lead to the same conclusion.

First, comparison of section 236.15 with other provisions that were amended or created by the same bill that created section 236.15 makes clear that the Legislature intended section 236.15 to require that the crime and the defendant's victimization (i.e., the defendant's experience of being subjected to sexual violence or intimate partner violence) be contemporaneous. Section 236.15 was created by Assembly Bill No. 124

5

(2021-2022 Reg. Sess.) (Assembly Bill 124). Assembly Bill 124 also created section 1016.7, which provides that if "[p]rior to the instant offense, or during the commission of the offense, the [defendant] is or was a victim of intimate partner violence or human trafficking," then prosecutors engaged in plea negotiations must consider that circumstance in mitigation if it contributed to commission of the offense. (§ 1016.7, subd. (a)(3).) Similarly, Assembly Bill 124 amended section 1170 to require that at sentencing the low term is the presumptive term if the same circumstance—"[p]rior to the instant offense, or at the time of the commission of the offense, the [defendant] is or was a victim of intimate partner violence or human trafficking"—contributed to commission of the offense. (§ 1170, subd. (b)(6)(C).) The same language—"[p]rior to the instant offense, or at the time of the commission of the offense, the [defendant] is or was a victim of intimate partner violence or human trafficking"—was also added to a resentencing provision of section 1170. (§ 1170, subd. (d)(8)(C).) But Assembly Bill 124 also created section 236.24, which makes it an affirmative defense (to any charge except a violent felony) "that the [defendant] was coerced to commit the offense as a direct result of being a victim of intimate partner violence or sexual violence *at the time of the offense* and had a reasonable fear of harm." (§ 236.24, subd. (a), italics added.)

Viewed together, those provisions and section 236.15 show that when the Legislature intended a provision to apply to crimes committed anytime after the defendant became a victim, the Legislature used broad language to make the temporally broad scope of the statute explicit: "[p]rior to the instant offense, or at the time of the commission of the offense, the person is or was a victim." (§ 1016.7, subd. (a)(3);

6

§ 1170, subds. (b)(6)(C), (d)(8)(C).)  But when the Legislature intended to limit a provision to crimes committed contemporaneously with the defendant's victimization, it omitted that language (prior to . . . or at the time . . . the person is or was) and instead used temporally restrictive language like "while" (§ 236.15, subd. (a)) and "at the time" (§ 236.24, subd. (a); § 236.15, subd. (g)(1)).  The conclusion for section 236.15 is again straightforward:  Because section 236.15 is expressly limited to crimes committed "while" the defendant was a victim, and the defendant must be a victim "at the time" of the offense, relief is available only for crimes committed contemporaneously with the defendant's victimization.  (§ 236.15, subd. (a), (g)(1).)

Second, the legislative history tells a similar story.  The legislative history of Assembly Bill 124 repeatedly confirms that section 236.15 was intended to "create vacatur relief for victims of intimate partner violence or sexual violence which mirrors the relief available to human trafficking victims."  (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 12; Assem. 3d reading analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 2; Assem. Concurrence in Sen. Amendments, Analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 3.)  The vacatur relief for victims of sexual violence and intimate partner violence is described as the "same relief" as the vacatur relief for victims of human trafficking.  (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 1; Assem. 3d reading analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 1; accord, Sen. Com. on Appropriations, Analysis of Assem. Bill. No. 124 (2021-2022 Reg. Sess.), p. 1 [the bill "expand[s] vacatur relief . . . for human trafficking victims and extend[s] it to victims

7

of intimate partner violence and sexual violence"].)  The Legislature used the same language in section 236.15 that it used in section 236.14.  And the legislative history does not suggest that, despite using the same language, the Legislature intended the temporal scope of section 236.15 to be broader than the temporal scope of section 236.14.  The temporal scope of section 236.14 should therefore be dispositive.  That is, if section 236.14's vacatur relief was intended to apply only to crimes committed while the defendant was being trafficked, then section 236.15's vacatur relief for victims of sexual violence or intimate partner violence should be similarly restricted.

The legislative history of section 236.14 is clear on that question.  Section 236.14 was created by Senate Bill No. 823 (2015-2016 Reg. Sess.) (Senate Bill 823).  An early legislative committee report contains the following statement from the bill's author: "Victims of human trafficking are caught in a vicious cycle of injustice that continues long after they have escaped from their traffickers.  Specifically, victims face criminal stigmatization from . . . acts that they were forced to commit *during their exploitation*. Reports from organizations like the State Courts Collaborative and the Polaris Project show that victims are often charged and convicted of a variety of crimes beyond prostitution and solicitation, like drug offenses, theft, using false identification, and more. The reports state that these crimes are usually committed at the direction of the victim's trafficker, s[]addling victims with long criminal records that limit access to employment opportunities, housing, financial aid and other services necessary to get back on their feet. [¶]  Perhaps most notably, victims with a criminal record face a serious obstacle in gaining stable employment.  A paper from the National Institute of Justice asserts that a

criminal record will keep many people from 'obtaining employment, even if they have already paid their dues, are qualified for the job and unlikely to reoffend'. Research from the American Journal of Sociology shows that the chances of a person with a criminal record getting a callback after a job interview are reduced by more than 50%. It is unfair that survivors of human trafficking, after escaping from abuse and coercion, must face the difficulties that come with a criminal record caused by their victimization. [¶] The state has removed a few barriers for victims, but there is much more to be done. Current law does not offer a complete remedy for the many offenses that victims of human trafficking may have on their criminal records. Penal Code Section 1203.49 allows courts to grant expungement relief to victims if the convictions are solely for solicitation or prostitution. The law limits the remedy to only two classes of crime, when in reality victims can have many different types of arrests and convictions on their records. [¶] Since 2014, fifteen states have passed legislation that creates a process for victims to vacate or expunge a conviction that relates to their experience as human trafficking victims. In particular, vacatur laws are seen as the best legal remedy for clearing convictions in comparison with expungement provisions. Vacatur laws offer a more complete reprieve for victims of human trafficking by offering a clean slate. SB 823 would provide this legal remedy to any nonviolent offense if certain criteria are met so that victims can truly get back on their feet." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), pp. 5-6, italics added.) Similar statements appear in numerous subsequent reports. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 6; Assem. Com. on

9

Public Safety, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 5; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 1; Sen. 3d reading analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended Aug. 1, 2016, p. 4; Sen. 3d reading analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.) as amended Aug. 18, 2016, p. 4; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 7.)

The picture that emerges from those statements is unmistakable:  Human trafficking victims are frequently "forced to commit" various crimes, including but not limited to solicitation and prostitution, "during their exploitation."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 5.)  As a result, when victims manage to escape from their traffickers, they have extensive criminal records that make it hard to obtain jobs and housing and otherwise reintegrate into society.  Prior law provided a form of expungement relief, but only for solicitation and prostitution offenses. The purpose of Senate Bill 823 was to provide a more thorough form of a relief (i.e., vacatur) and for a broader range of offenses, so that victims who escape their traffickers can obtain a "clean slate" that will allow them to "get back on their feet."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 823 (2015-2016 Reg. Sess.), p. 6.)

In sum, the legislative history of section 236.14 shows that the Legislature's intent was to enable human trafficking victims to free themselves of the criminal records that they accumulated during their exploitation.  The legislative history contains no suggestion that the Legislature intended to provide relief for crimes that human trafficking victims commit after they are no longer being trafficked.  Section 236.15

10

therefore must be similarly restricted, because (1) it was intended to provide relief that mirrors the relief in section 236.14, (2) it uses the same language, and (3) there is no indication that the Legislature intended it to be broader than section 236.14.

For all of these reasons, both the plain language of section 236.15 and extrinsic interpretive aids are in accord on this issue. The language of section 236.15, the language of related statutes, and the legislative history all show that section 236.15 is limited to crimes committed while the defendant was being subjected to sexual violence or intimate partner violence, just as section 236.14 is limited to crimes committed while the defendant was being trafficked.

III.    *Other arguments*

Apart from its discussion of the ordinary meaning of "victim," the majority opinion contains two arguments for the conclusion that there is an "interpretive quandary" here. (Maj. opn., *ante*, at p. 23.) Neither has merit.

First, the majority opinion concedes that for victims of human trafficking or intimate partner violence, "there often are straightforward ways to draw a line" between crimes committed while the defendant was a victim and crimes committed later—the later crimes are those that the victim committed after escaping from the trafficker or the abusive relationship. (Maj. opn., *ante*, at pp. 22-23.) But the majority opinion claims that "it would be odd to draw the line in the same way" for victims of sexual violence, both "for a single act of sexual violence" and because "for multiple acts of sexual violence, it would be discordant for the statute to cover offenses between the acts but exclude those after the last one." (Maj. opn., *ante*, at p. 23.)

11

The argument is not persuasive. For victims of sexual violence who are under the control or influence of their abusers for any extended period of time, there is nothing odd or discordant about limiting vacatur relief to crimes that the victims committed during that period, regardless of whether the abuser committed one or several acts of sexual violence. For example, a victim who is kidnapped, raped, and forced to commit various crimes before managing to escape could obtain vacatur relief for those crimes regardless of whether the kidnapper/rapist committed one rape or more than one. The same is true of a child victim of sexual violence perpetrated by an adult family member. But in either case, if the victim commits additional crimes after escaping, the Legislature's decision to deny vacatur relief for those later crimes is neither odd nor discordant. Perhaps one day the Legislature will enact a statute to extend vacatur relief to those crimes too. But section 236.15 is not that statute.

Second, the majority opinion discusses certain portions of the legislature history that do not show unambiguously that the Legislature intended section 236.15 and section 236.14 to be limited to crimes committed contemporaneously with the defendant's victimization. (Maj. opn., *ante*, at pp. 23-25.) Again, the discussion is unpersuasive. It is unsurprising, of course, that not *everything* in the legislative history of section 236.15 or section 236.14 shows unambiguously that the Legislature intended to limit both statutes to contemporaneous crimes. For example, the legislative history contains various broad statistics that do not speak to that precise issue. (See maj. opn., *ante*, at pp. 23-24.) But other parts of the legislative history do address the issue, as discussed in part II, *ante*, of this concurrence. They all show that the Legislature intended such a limitation in

12

section 236.14 and intended section 236.15 to mirror section 236.14.  Nothing in the legislative history suggests a contrary intent.

As far as I can tell, any comprehensive review of the legislative history compels the conclusion that the Legislature intended to limit section 236.15 and section 236.14 to crimes that the defendant committed while being victimized.  The majority opinion does not attempt such a review, so its cursory discussion of the legislative history proves nothing.

IV.	*Conclusion*

There is no "quandary" or "ambiguity" here.  (Maj. opn., *ante*, at pp. 23, 25.)  Just as section 236.14 is limited to crimes that the defendant committed while being trafficked, section 236.15 is limited to crimes that the defendant committed while being subjected to intimate partner violence or sexual violence.  S.H. was last subjected to such violence in 2018 but committed the child pornography offense in 2022, so he is ineligible for relief under section 236.15.  And because that issue disposes of the entire appeal, we need not and should not address the numerous other issues discussed in the majority opinion, such as the missing comma (maj. opn., *ante*, at pp. 13-15), the standard of review (*id.* at pp. 16-19), and the meaning of "direct result" (*id.* at pp. 26-28).  It is well established that issues of statutory interpretation are reviewed de novo.  (E.g., *Walker v. Superior Court* (2021) 12 Cal.5th 177, 194.)  That is the only standard of review we need in this case.

13

I agree that we should reverse with directions to deny S.H.'s petition. But for all of the foregoing reasons, I concur in the judgment only.


MENETREZ          
J.

14